COTTMAN TRANSMISSION
SYSTEMS, INC.

v.

Alan A. DUBINSKY, William Dubinsky
and Dubinsky Brothers, Inc.

Civ. A. No. 82–1471.

United States District Court,
E.D. Pennsylvania.

Oct. 29, 1982.

---

**134**

Kathleen A. Fiftal, James A. Hartz, Fort Washington, Pa., for plaintiff.

Michael Roth, Scranton, Pa., David Sorin, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

### WEINER, District Judge.

This action began with a complaint by plaintiff alleging breach of contract and a counterclaim by defendants alleging fraud and breach of contract. By Memorandum Opinion and Order dated August 6, 1982, this court denied both the plaintiff's motion to dismiss the first two counts of the counterclaim and the alternative motion for a more definite statement of these two counts. Trial was subsequently held before this court, sitting without a jury.

On April 15, 1980, defendant Alan Dubinsky entered into a License Agreement with plaintiff by which defendant was granted permission to operate a Cottman Transmission Center in the State of Florida (See Joint Exhibit 5). In August 1980, the License Agreement was amended to include defendant William Dubinsky as an Additional Operator (See Joint Exhibit 7). Later, defendants Alan and William Dubinsky transferred their interest in the License Agreement to Dubinsky Brothers, Inc., while remaining personally liable for all Operator obligations. (See Joint Exhibit 9).

The defendants first claim that plaintiff violated Paragraph 9 of the License Agreement which required plaintiff to use all advertising fees collected for the placement of advertising for defendants' benefit. The defendants claim that plaintiff pledged defendants' advertising fees to the Provident National Bank of Philadelphia (PNB) and intentionally and knowingly withheld knowledge of this pledge from the defendants. The plaintiff admits that such a security arrangement was made but states that its existence was indicated in the Audited Financial Statement contained in the Offering Circular. The defendant William Dubinsky testified that the Offering Circular given to him by plaintiff's representative did not contain the Audited Financial Statement. He admitted, on cross-examination, that a footnote in the Offering Circular referred to the Audited Financial Statement. He further admitted that he had two attorneys, who represented him in Florida, examine the Offering Circular before he entered into the License Agreement. Lastly, he had obtained an Offering Circular from another transmission compa-

ny prior to obtaining the Offering Circular from plaintiff, and this other Offering Circular contained an Audited Financial Statement. Under all the evidence presented in the case, this court finds that plaintiff's Offering Circular did contain the Audited Financial Statement in which the information was complete and adequate, and that the Offering Circular was given to defendants before they became franchisees (See Joint Exhibits 4 and 7). The PNB's security arrangement with plaintiff was also a matter of public record (See Joint Exhibits 1 and 2). Furthermore, testimony of defendants was completely devoid of evidence that they actually suffered any injuries as a result of the existence of the security arrangement.

The defendants also claim that plaintiff violated Paragraph 9 of the License Agreement which provides that the advertising fees paid by defendants should not be used for the general operating expenses of plaintiff. However, this court finds that defendants failed to substantiate their claim. They presented no evidence to support a conclusion that the advertising fees were used for any other purpose than advertising.

According to Paragraph 5 of the License Agreement, plaintiff was required to obtain advertising for defendants' benefit. The defendants claim that plaintiff failed to obtain yellow page advertising and that they suffered a loss of profits as a result. The plaintiff claims that the failure resulted when the request for advertising by plaintiff was ignored by the yellow page representative. This court does not find that defendants proved that the failure to obtain yellow page advertising was the result of the fault on any part of plaintiff. A witness for plaintiff testified that plaintiff did timely place the insertion order and did take further monitoring action. Nor does this court find that defendants proved any quantifiable lost profits from the lack of yellow page advertising. The testimony which defendants offered to support their claim of lost profits was conflicting, inconsistent and inconclusive. While defendants testified as to a resulting loss of business, a deposition taken of defendants' accountant indicated that defendants did approximately the same amount of business during the one month period after the yellow page advertising as was done during one of the months prior to the advertising.

The defendants further claim that plaintiff violated Paragraph 5 of the Appendix "A" of the License Agreement when plaintiff failed to assist defendants in determining the market feasibility and site selection for their Cottman Transmission Center. This court finds that defendants failed to provide sufficient evidence to prove these claims. It is true that defendants encountered zoning problems with their lease which caused a delay in the opening of their Cottman Transmission Center. However, this was not the result or fault on the part of plaintiff, but rather on the part of the lessor who warranted in the lease that the property was properly zoned for the business to be operated by defendants. In spite of this warranty, defendants took no action against lessor when they encountered zoning problems.

We now turn to the claims of plaintiff. The plaintiff claims that as of the time the business was closed, defendants owed $17,600.00 for outstanding license and advertising fees and $3,000.00 for machinery parts ordered and delivered. However, such damages should only be awarded if it is found that plaintiff performed all of its obligations under the License Agreement.

Courts are divided over whether a franchisor-franchisee relationship creates a fiduciary relationship or a contractual one.

Indeed the question "is not a simple one." *Ungar v. Dunkin Donuts of America, Inc.,* 68 F.R.D. 65, 144 (E.D.Pa.1975). Some courts have held that a fiduciary relationship exists. *See, e.g., Mobil Oil Corp. v. Rubenfeld,* 72 Misc.2d 392, 339 N.Y.S.2d 623 (1972). Other courts have held that a franchisor does not stand in a fiduciary relationship to its franchisees. *See, e.g., E.B.E. Inc. v. Dunkin Donuts of America, Inc.,* 387 F.Supp. 737 (E.D.Mich., 1974); *Pollack v. International Industries,* C.A. No. 72–1513–

EC (C.D.Cal., Feb. 8, 1973); *Jirna, Ltd. v. Mister Donut of Canada, Ltd.,* 22 D.L.R. (3d) 639 (Ont.Ct.App.1971). This District Court has previously labeled questions concerning alleged mismanagement and misappropriation of advertising funds as contractual, not fiduciary claims. *Ungar v. Dunkin Donuts of America, Inc., supra,* at 143. Whether the relationship of plaintiff and defendants is termed fiduciary or contractual, it is clear that plaintiff failed to perform all of its obligations.

Neither Ft. Lauderdale yellow page advertising nor local newspaper advertising was obtained for defendants by plaintiff. The plaintiff also did not secure advertisement for the grand opening of defendants' Cottman Transmission Center. It is clear that plaintiff did not do as much as it could have done for the benefit of defendants.

■ Because of plaintiff's failure to perform the obligations of the License Agreement, the plaintiff cannot now invoke the protections of the License Agreement such as the injunctive relief it seeks. The plaintiff seeks to enjoin defendants from operating a transmission center within a radius of ten miles of their former center and three miles of any other center. This court decides that defendants are restricted from using the name of "Cottman" in their business. However, no other restrictions shall be applied.

■ Each of the parties in the case *sub judice* argues that it is entitled to damages because of the breaches by the other party. Such an argument is valid where the party has fulfilled its obligations under the contract; the argument is not valid where the party has failed to fulfill its obligations. The rule in Pennsylvania and elsewhere is that when parties to a contract each commit a material breach, the law will give relief to neither party. *Automotive Devices Co. v. Automotive Devices Co. of Pennsylvania,* 292 F.2d 663 (3d Cir. 1961). This court will give relief to neither party, since each has failed to fulfill its obligations.

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the above memorandum opinion constitutes this court's findings of fact and conclusions of law.