RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0271P (6th Cir.)
File Name: 02a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ELIZABETH L. ROUSE,
      *Plaintiff-Appellee,*

*v.*

No. 01-1152

DAIMLERCHRYSLER
CORPORATION UAW
NON-CONTRIBUTORY PLAN,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73311—Paul D. Borman, District Judge.

Argued: June 19, 2002

Decided and Filed: August 13, 2002

Before: COLE and GILMAN, Circuit Judges; MILLS,
District Judge.

_____

[*]The Honorable Richard Mills, Senior United States District Judge
for the Central District of Illinois, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Francis R. Ortiz, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellant. Camille Horne, PLUNKETT & COONEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Francis R. Ortiz, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellant. Robert G. Kamenec, PLUNKETT & COONEY, Bloomfield Hills, Michigan, for Appellee.

---

**OPINION**

---

RICHARD MILLS, District Judge. In 1995, Elizabeth Rouse successfully petitioned Michigan's Macomb County Circuit Court to retroactively modify her 1984 divorce settlement via a domestic relations order. The order gave Rouse survivorship-benefits in her deceased ex-husband's pension. It also impacted the DaimlerChrysler Corporation UAW Non-Contributory Plan's ("the Plan") obligations under the Employee Retirement Income Security Act of 1974 ("ERISA").

The Plan removed Rouse's case to federal court on the basis of federal-question jurisdiction. It contested the domestic relations order's validity, claiming that the state court issued it pursuant to a sham hearing. The district court, through Judge Denise Page Hood, held that this was an issue that should be decided by the state court. Thus, the district court dismissed the case so that the parties could refile it in state court.

Two years later, Rouse filed a Motion for Rule to Show Cause in an effort to require the Plan to pay her survivorship-benefits claim. The Plan again removed the case to federal court. This time the Plan argued that the domestic relations order was invalid under ERISA.

Judge Hood recused herself and the case was assigned to Judge Borman. Judge Borman reviewed Judge Hood's order and concluded that it required the parties to resolve all issues about the domestic relations order's validity in state court. He held that Judge Hood's order was law of the case and stayed the suit pending a state court's decision about the order.

Judge Borman also held that "comity and collegiality between coordinate courts," as well as ERISA's statutory scheme, required that the domestic relations order's validity be decided in state court. He denied the Plan's motion for entry of judgment and stayed all proceedings pending the state court's decision.

For the following reasons, we **REVERSE** the district court's judgment.

## BACKGROUND

Elizabeth Rouse was married to Chrysler Corporation employee Kenneth C. Rouse for approximately 27 years. The Rouses divorced on April 11, 1984, and entered into a property settlement before the Macomb County Circuit Court. The settlement agreement stated that:

> the Defendant [Elizabeth Rouse] is awarded one-half of any pension payment paid to the Plaintiff [Kenneth Rouse] by Chrysler Corporation prior to the Plaintiff attaining the age of sixty two (62) years. After Plaintiff has attained the age of sixty two (62) years, Defendant is awarded the sum of TWO HUNDRED THIRTY THREE AND 62 ($233.62) DOLLARS per month of any pension payments paid to the Plaintiff by Chrysler Corporation. In the event of Plaintiff's death, Defendant is awarded any survivors pension payments payable by Chrysler Corporation; however, Plaintiff shall not be obligated to provide for any such survivors payments.

When Kenneth Rouse died of cancer in April 1994, Mrs. Rouse sent a letter to the Chrysler-UAW Pension Board of Administration ("the Board") asking it to provide her with

surviving spouse benefits from her ex-husband's pension. Chrysler's pension analyst wrote back to Mrs. Rouse and informed her that she was ineligible for those benefits. The pension analyst stated that although Mr. Rouse was an active participant in the Chrysler-UAW Non-Contributory Pension Plan, the Plan did not provide for automatic payment of surviving spouse benefits. The analyst further noted that the divorce decree upon which Mrs. Rouse based her claim did not expressly obligate Mr. Rouse to provide for survivor payments.

Since Mr. Rouse did not assign survivor benefits to Mrs. Rouse in the settlement agreement, and the Plan did not automatically provide them, Chrysler informed Mrs. Rouse that she would need to get a Qualified Domestic Relations Order ("QDRO") to receive surviving-spouse benefits. Mrs. Rouse notified Chrysler that she intended to seek a QDRO and she sent the Board a proposed QDRO. Board member Ronald Gurdak approved the proposed QDRO as to its form, but would not approve its content. Mrs. Rouse then filed suit in county court in an effort to get a domestic relations order ("DRO") that qualified under ERISA. The county court held a hearing, but the Plan did not appear at the hearing or file an opposition brief. Accordingly, the county court issued Mrs. Rouse a DRO and forwarded a copy to the Board.

Armed with the Macomb County Circuit Court's July 5, 1995, Order, Mrs. Rouse again requested the Board to approve her request for pension benefits. On September 22, 1995, the Board denied her request. It stated several reasons for the decision. Among them, the Board asserted that the state court's DRO did not qualify under ERISA because:

   a) The pension agreement between Chrysler and Mr. Rouse was not obligated to provide benefits to Plaintiff at his death;
   b) There was no indication of Mr. Rouse's intent to change division of property status at time of divorce;

### C.  *Collateral Attack*

Finally, Mrs. Rouse contends that the Plan's Motion for Entry of Judgment is an impermissible collateral attack on Judge Hood's 1998 Order and Opinion. The record does not support this contention.

When Judge Hood dismissed Mrs. Rouse's and the Plan's cross-motions for summary judgment in 1998, she did so to allow the state court the opportunity to determine whether or not the DRO was issued pursuant to a sham hearing. Her Order and Opinion did not address whether the DRO was valid under ERISA, and that was the primary issue in the Plan's subsequent Motion for Entry of Judgment. Since the issues Judge Hood considered were not the same issues in the Plan's Motion for Entry of Judgment, the Motion for Entry of Judgment cannot be considered a collateral attack.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is **REVERSED**. The case is **REMANDED** for further consideration consistent with this opinion.

bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *See Colorado River*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d. 483 (1976) (discussing *Burford*).

The *Burford* abstention doctrine is inapplicable here for several reasons. First, there is no state administrative agency involved in the dispute. Second, there is no difficult question of state law whose importance transcends the result of this case, or any basis for concluding that federal review of this matter would be disruptive of Michigan's domestic relations policies. The question before the district court was whether the DRO satisfied §1056 of ERISA. That question is strictly federal. Since federal review of the DRO was limited to determining whether the DRO created any obligations under ERISA—a federal statute—the district court's review did not require it to meddle in state domestic relations law or interfere with state domestic relations policies.

Moreover, the Supreme Court has stated that when the status of a domestic relationship has been determined as a matter of state law—upon the entry of a divorce, settlement agreement, etc.—and has no bearing on the underlying claim, "we have no difficulty concluding that *Burford* abstention is inappropriate." *See Ankenbrandt v. Richards*, 504 U.S. 689, 705-06, 112 S.Ct. 2206, 2215-16, 119 L.Ed.2d 468 (1992). The status of Mrs. Rouse's domestic relationship with her ex-husband had already been determined when she obtained the DRO in state court. Because the Plan's claim in its Motion for Entry of Judgment contests only the validity of the DRO under ERISA, *Burford* abstention is inappropriate here. *See also Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir. 1998) (stating that the domestic relations exception to federal jurisdiction is limited to cases where a party seeks the issuance of a divorce or child custody decree in federal court).

c) The new decree was entered 11 years after divorce and 10 years after enactment of [the Retirement Equity Act of 1984, P.L. 98-397];

d) The Domestic Relations Order was submitted to the court after Mr. Rouse's death.

In 1996, Mrs. Rouse moved the district court for summary judgment, arguing that the Board did not have authority to disregard the state court's DRO. The Plan also moved for summary judgment, asserting that the 1984 divorce decree did not obligate Mr. Rouse to pay Mrs. Rouse survivor benefits and that the DRO was the invalid result of a sham state court proceeding. Judge Hood denied both parties' motions, holding that the propriety of the Plan's denial could not be assessed until the state court interpreted the divorce decree and the DRO. Judge Hood dismissed the case and it remained idle for two years until Mrs. Rouse filed a Motion for Order to Show Cause in state court to obtain survivor benefits.

Since Mrs. Rouse's benefit claim implicated ERISA, the Plan removed the case to district court pursuant to 28 U.S.C. § 1331. Judge Hood recused herself and the case was assigned to Judge Paul Borman. The Plan moved for an entry of judgment and Judge Borman denied the motion. Judge Borman held that the law-of-the-case doctrine required the court to follow Judge Hood's previous order. Judge Borman also held that "comity and collegiality between coordinate courts," as well as ERISA's statutory scheme, required that the DRO's validity be decided in state court. He stayed the case pending the state court's decision about the divorce decree and the DRO's validity. The Plan timely appealed the district court's judgment.

## DISCUSSION

Three issues comprise this appeal: the application of the law-of-the-case doctrine; the application of *Burford* abstention (*see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)); and whether the Plan's Motion

for Entry of Judgment is an impermissible collateral attack.[1] The Court considers each issue in turn.

## A.    *Law-of-the-case Doctrine*

We use an abuse of discretion standard when reviewing a lower court's application of the law-of-the-case doctrine. *See Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002) (citing *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998). Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation. *See United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). The doctrine also bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not. *See United States v. Adesida*, 129 F.3d 846, 849-50 (6th Cir. 1997) (citation omitted).

The Plan asserts that the district court improperly applied the law-of-the-case doctrine to prevent consideration of the DRO's validity under ERISA. According to the Plan, Judge Hood's 1998 Order and Opinion never made any findings with respect to this aspect of the DRO's validity. Judge Hood, the Plan contends, only considered whether the DRO was issued following a sham hearing in the state court. Since Judge Hood limited her Order and Opinion to the sham-hearing issue, the Plan argued that Judge Borman could consider the separate matter of whether the order was valid under ERISA. Judge Borman disagreed. In his estimation, Judge Hood's Order and Opinion found that the DRO's validity should be decided by the state court and this was law of the case.

---

[1]The Plan raises the district court's jurisdiction as a fourth issue for appeal. The Plan contends that the district court had jurisdiction to hear the ERISA issue raised in the Motion for Entry of Judgment. Since no one disputes this and it is clear that the district court had jurisdiction pursuant to 28 U.S.C. § 1331, we will not further discuss the issue.

A careful review of Judge Hood's 1998 Order and Opinion shows that the only issue she decided with respect to the DRO's validity was whether the order was issued pursuant to a sham proceeding. Moreover, she expressly stated that "[w]hether the QDRO met the requirements of ERISA is not in dispute, or at the very least this issue has not been addressed by either party." Because Judge Hood did not make a finding about the DRO's validity under ERISA, it was an abuse of discretion for Judge Borman to hold that the law-of-the-case doctrine barred him from considering this issue.

## B.    *Abstention*

This Court reviews abstention decisions de novo. *See Heitmanis v. Austin*, 899 F.2d 521, 527 (6th Cir. 1990) (citing *Litteral v. Bach*, 869 F.2d 297, 298 (6th Cir. 1989). Since abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," "[o]nly the clearest of justifications" will warrant abstention. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-19, 96 S.Ct. 1236, 1244-47, 47 L.Ed.2d. 483 (1976).

The district court apparently dismissed this case pursuant to the *Burford* abstention doctrine.[2] *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is used to avoid conflict with a state's administration of its own affairs. *See id.* It applies only if a federal court's decision on a state law issue is likely to "interfere with the proceedings or orders of state administrative agencies." *See New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514 (1989). The *Burford* abstention should not be applied unless: (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at

---

[2]The district court did not specifically refer to *Burford*. However, its comment about "respect for state domestic relations law" indicates that it relied on this abstention doctrine.