NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0385n.06

No. 22-3585

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 18, 2023
DEBORAH S. HUNT, Clerk

ALLIED ERECTING AND DISMANTLING CO., INC.,

    Plaintiff-Appellant,

v.

UNITED STATES STEEL CORPORATION,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined in full, and NALBANDIAN, J., joined in part. NALBANDIAN, J. (pp. 23–26), delivered a separate opinion concurring in part and dissenting in part.

**CLAY, Circuit Judge.** This diversity of citizenship action concerns a heavily litigated contract dispute between Plaintiff Allied Erecting and Dismantling Company, Inc. ("Allied") and Defendant United States Steel Corporation ("U.S. Steel"). At this point, the parties have participated in a three-week jury trial, two appeals, and two remands. *See Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 726 F. App'x 279 (6th Cir. 2018) ("*Allied I*"); *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 814 F. App'x 21 (6th Cir. 2020) ("*Allied II*"). This appeal concerns evidentiary rulings that the district court made on the second remand. We **AFFIRM** for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

For several decades, Allied contracted with U.S. Steel to dismantle U.S. Steel's steelmaking facilities and salvage the resulting scrap metal. The instant dispute involves dismantling work at U.S. Steel's now defunct Fairless Works steelmaking facility ("Fairless"), which is located outside Philadelphia, Pennsylvania. The "material exchange" at the heart of the contractual dispute between Allied and U.S. Steel "is a simple one: Allied dismantles U.S. Steel's Fairless plant at essentially no cost, and, in return, U.S. Steel lets Allied keep and sell the scrap metal generated by that dismantling work." *Allied II*, 814 F. App'x at 23.

The Fairless plant included a "Hot End," where raw materials were processed and melted, and a "Cold End," where steel slabs were rolled, treated, or processed. Allied's work initially concerned the Hot End, and it was governed by two contracts executed in 1992: the 1992 Specification and the 1992 Construction Contract (collectively, the "1992 Contracts"). Through the 1992 Contracts, U.S. Steel agreed that once Allied completed asbestos removal at a facility that U.S. Steel intended to dismantle, U.S. Steel would assign ownership of that facility. U.S. Steel's assignment of ownership to Allied included: (1) "[a]ll ferrous and non-ferrous scrap[1] resulting from the dismantling work[;]" (2) "[a]ll ferrous and non-ferrous scrap located within each dismantling area[;]" and (3) "[r]ailroad track located within a specific dismantling area which exclusively serves that dismantling area." 1992 Specification, R. 269-2, Page ID #18069–70. According to Allied's president, John Ramun, Allied completed all Hot End work by 1999.

---

[1] Ferrous scrap is made of iron or steel. Non-ferrous scrap is metal that does not contain iron or steel.

In response to disputes that arose between U.S. Steel and Allied, the parties entered into an agreement called the 2003 Agreement in Principle (the "2003 AIP").[2] The 2003 AIP "built upon" the 1992 Specification. *Allied II*, 814 F. App'x at 23. Through the 2003 AIP, U.S. Steel agreed that "[a]ny further dismantling work" at Fairless that U.S. Steel had "released and authorized in writing for dismantling" would "be awarded to and performed by [Allied]" pursuant to "the same relevant terms and conditions contained in" the 1992 Specification. 2003 AIP, R. 269-4, Page ID #18108. Like the 1992 Specification, the 2003 AIP provided that Allied would "own all ferrous and non-ferrous scrap generated on any projects awarded to" it. *Id.* at Page ID #18107. U.S. Steel also provided Allied with a $7 million advance payment. In exchange, Allied agreed to conduct its dismantling "at no cost to U.S. Steel (other than the Advance Payment)." *Id.* at Page ID #18108.

Beyond the 1992 Contracts and the 2003 AIP, Allied and U.S. Steel ultimately "entered into several subsequent contracts, bringing the total number of contracts governing the parties' relationship to ten, none of which entirely supersedes any other." *Allied I*, 726 F. App'x at 281. One of those contracts was a Dismantling Services Agreement dated July 15, 2004 (the "2004 DSA").

Shortly after the parties executed the 2003 AIP, John Ramun's brother, Mike Ramun, visited Fairless and prepared an estimate of the tons of ferrous steel to be dismantled at Fairless' sheet and tin facilities ("Sheet & Tin"), which were in Fairless' Cold End.[3] Mike memorialized his estimate in handwritten notes that he later converted into a typed spreadsheet (the "Original Estimate").

---

[2] The disputes that led to the 2003 AIP are not related to the instant appeal.

[3] John Ramun was Allied's president. Mike Ramun prepared the estimate. For clarity, the Court refers to the two by their first names.

## B. Procedural History

The evidentiary issues on appeal span the initial jury trial, the two subsequent appeals, and the second remand. For clarity, we will first provide a broad overview of the case's procedural history below. We will then provide a more detailed procedural history when discussing each issue on appeal.

### 1. 2015 Jury trial

Allied commenced the instant diversity of citizenship action in 2012 pursuant to 28 U.S.C. § 1332(a). Later that year, Allied filed its operative second amended complaint. U.S. Steel answered Allied's second amended complaint and asserted three counterclaims for breach of contract. Counts I through VI of Allied's second amended complaint arise from Allied's dismantling work at Fairless. After *Allied I* and *Allied II*, only Counts IV and V remain of the second amended complaint remain. However, because Counts I and III are relevant to our analysis, we summarize Counts I, III, IV, and V below.

- **Count I.** Allied sought declaratory judgment under the 2003 AIP and 2004 DSA stating: (1) that it was not obligated to perform certain work at no cost; (2) that U.S. Steel was not permitted to assess certain "backcharges," (3) that certain concrete removal and backfilling work in the Fairless basements were within Allied's scope of work and that U.S. Steel must compensate Allied for such additional work; and (4) that "U.S. Steel must cease and desist from continuing to perform this work and/or misappropriating Allied's property in connection therewith." Second Am. Compl., R. 43, Page ID #543.

- **Count III.** Allied sought breach of contract damages under the 1992 Construction Contract for U.S. Steel's alleged delays in "releasing" Fairless facilities to Allied. *Id.* at Page ID #544–49.

- **Count IV.** Allied sought compensation for the scrap value of buildings that remained at Sheet & Tin. According to Allied, "once the asbestos removal at each facility has been completed, U.S. Steel was contractually obligated to assign the ownership of each facility (including all ferrous and non-ferrous scrap, all spare parts and equipment and all railroad track located within each dismantling area) to Allied." *Id.* at Page ID #549. Allied alleged that "U.S. Steel breached its contractual obligations to Allied by removing and/or placing on indefinite hold various facilities that were within Allied's scope of work." *Id.* at Page ID #551.

- **Count V.** Allied sought the value of certain underground utility lines and railroad tracks that it alleges remained at the Hot End and at Sheet & Tin.

Before trial, the district court granted summary judgment to U.S. Steel with respect to Allied's Count VI and U.S. Steel's Counterclaim II. That order resulted in the district court awarding U.S. Steel $11,869,04.08 in damages.

The district court then presided over a three-week jury trial on the remaining counts. Before the case went to the jury, however, the district court determined that Allied's Count III, Count IV, and much of Count V were time-barred and that U.S. Steel was entitled to judgment as a matter of law ("JMOL") on those counts. The only portion of Count V that survived the district court's order concerned allegations that U.S. Steel awarded certain Hot End rail removal work to nonparty Fox Construction Company. With respect to the remaining claims and counterclaims, the jury issued a verdict that was largely favorable to Allied, awarding it $694,067.00 in damages. Ultimately, totaling up the damages from the district court's issuance of summary judgment and JMOL, as well as the jury's verdict, U.S. Steel obtained a net judgment of nearly $10 million.

### 2. *Allied I* Through *Allied II*

In *Allied I*, this Court reversed the district court's determination that U.S. Steel was entitled to JMOL on Counts IV and V. *Allied I*, 726 F. App'x at 285. However, because the district court

awarded U.S. Steel JMOL solely on statute of limitations grounds, the Court noted that "[o]n remand, the district court is free to consider or reconsider other arguments presented by U.S. Steel that may warrant the reissuance of judgment in favor of U.S. Steel as to these counts." *Id.* at 285–86.

On remand, the district court accepted this Court's invitation to consider other arguments and held once more that U.S. Steel was entitled to JMOL on Counts IV and V. This time, the district court found that U.S. Steel was entitled to JMOL for two reasons. First, it determined that both the 1992 Specification and the 2003 AIP contained a "'generation' requirement," under which "Allied had to generate the scrap (*i.e.*, actually perform the dismantling) in order to have the ability to use the scrap or sell it for revenue." Mem. Op. and Order, R. 409, Page ID #23199. The district court concluded that "[t]he trial record is devoid of any evidence that Allied generated scrap from Sheet & Tin" and that Allied was therefore not entitled to any of Sheet & Tin's scrap value. *Id.* Second, the district court held that U.S. Steel was entitled to JMOL for independent evidentiary reasons; in short, the district court determined that Allied's evidence for both counts were "unspecific, vague, and conclusory." *Id.* at Page ID #23200.

In *Allied II*, this Court reversed and remanded, finding that "neither conclusion offered by the district court in support of JMOL [on remand] holds water." *Allied II*, 814 F. App'x at 26. As to the contracts, the Court determined that neither the 1992 Specification nor the 2003 AIP "contain[ed] a clear and unambiguous 'generation requirement.'" *Id.* As to the evidentiary holding, the Court referred to "multiple trial records from which a reasonable juror could have concluded that U.S. Steel removed 'specific buildings' from Allied's scope of work, after June 2008." *Id.* at 27. Moreover, the Court also observed that "given the straightforward nature of count V (at least with respect to breach; damages are another question), it [was] not clear why

Allied needed to submit more detailed evidence on this point than it did in order to take its claim to a jury." *Id.*

In its remand instructions, the Court "acknowledge[d] that U.S. Steel raised two alternative grounds for affirmance in its brief." *Id.* However, "because neither ground would [have permitted the Court] to affirm the district court's grant of JMOL in full," the Court left "it to the district court to resolve these issues in the first instance, within the context of a new trial." *Id.*

### 3. Second Remand and Third Appeal

On second remand, Allied received several unfavorable evidentiary rulings that Allied avers "effectively dismiss[ed]" portions of Counts IV and V. Appellant's Br. at 2. In response, Allied entered into a provisional settlement agreement with U.S. Steel, but it reserved the right to appeal the unfavorable evidentiary rulings. *See Raceway Props., Inc. v. Emprise Corp.*, 613 F.2d 656, 657 (6th Cir. 1980); *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 332 (6th Cir. 2018). The district court entered judgment the next day, and Allied's timely appeal followed.

Allied's appellate brief is unclear as to which *orders* are being appealed.[4] At oral argument, the panel inquired into this lack of clarity; Allied's response failed to ameliorate the lack of clarity. Ultimately, Allied appears to appeal the following:

- the district court's denial of Allied's motion for a status conference and expert report schedule, and Allied's motion to substitute expert;

- the district court's rulings that Mike could not render any opinions or give any testimony regarding the content of his Original Estimate;

---

[4] Allied's notice of appeal simply states that it appeals the district court's entry of judgment.

- the district court's order granting U.S. Steel's motion *in limine* to exclude evidence regarding basement work at Fairless;

- the district court's order granting U.S. Steel's motion *in limine* to exclude evidence regarding Allied's alleged entitlement to, or damages resulting from, any Hot End materials); and

- the district court's denial of Allied's motion to quantify damages for dilatory retention of facilities or materials.

## II. DISCUSSION

### A. Standard of Review

The Court "review[s] a district court's evidentiary rulings for an abuse of discretion." *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015). "In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) (quoting *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 544 (6th Cir. 2000)).

In making its evidentiary rulings, the district court implicitly applied the law-of-the-case doctrine to deny the motions at issue. The Court reviews a district court's application of the law-of-the-case doctrine for abuse of discretion. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

### B. Analysis

#### 1. Allied's Request for a Substitute Expert

Allied appeals the district court's refusal to permit a substitute expert to testify in lieu of an expert whose testimony was largely excluded at trial. The substitute expert would have testified

regarding damages such as "the estimated weights of the ferrous and non-ferrous scrap associated with Counts IV and V." Pl.'s Mot. to Substitute Expert, R. 451, Page ID #23673.

Mike's Original Estimate of the tons of ferrous steel to be dismantled at Sheet & Tin was admitted into evidence at trial. However, at trial, Allied purported that Mike was not available as a witness. Accordingly, Allied had John authenticate Mike's Original Estimate. Additionally, Allied brought in Ed Klein, who was then an Allied employee, to testify as an expert witness as to, among other things, the reasonableness of the Original Estimate. After Klein testified, however, the district court held that Klein's testimony was inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court reasoned "that there was nothing that [Klein] did to verify the weights per square foot or the methodology used, or even an explanation of the methodology that was used in the original estimate or the methodology Mr. Klein used when verifying the weights per square foot for each of the buildings." Trial Tr., R. 280, Page ID #20387.

On second remand, in a "Motion for Status Conference and Expert Report Schedule," Allied informed the district court that "Ed Klein is no longer an employee of Allied and is not available to testify to Allied's damage calculations for Counts IV and V." Pl.'s Mot. for Status Conference and Expert Report Schedule, R. 418, Page ID #23253. Accordingly, Allied averred that it required "replacement expert witnesses to testify regarding these damage components, including the estimated weights of the ferrous and non-ferrous scrap associated with Counts IV and V." *Id.* It further stipulated that any new expert would have to go to Fairless for a site visit. *Id.* In other words, Allied requested a limited reopening of discovery. Allied contended that allowing a replacement expert witness to testify and reopening discovery would also "satisfy" the district court's "prior concerns regarding Mr. Ed Klein's foundation and/or methodology regarding

the estimates for the structural ferrous (Count 4) and hot end non-ferrous (Count 5)." *Id.* at Page ID #23252. Subsequently, Allied filed a motion to substitute Klein, stating that "Mr. Klein is no longer employed by Allied, and is unwilling (and, thus unable) to offer expert testimony in the upcoming trial in this matter." Pl.'s Mot. to Substitute Expert, R. 451, Page ID #23669.

The district court denied both motions. The district court reasoned that although *Allied II* held that Allied was entitled to a new trial on Counts IV and V, it did *not* hold that Allied was entitled to call "entirely new witnesses in an effort to correct deficiencies identified both during the initial trial and by" subsequent rulings. Mem. Op. and Order, R. 439, Page ID #23546–47. The district court observed that in *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001), "the Sixth Circuit rejected the plaintiff's claim that, after his expert testimony was excluded under *Daubert*, he should be 'afforded a second chance to marshal other expert opinions and shore up his case[.]'" *Id.* at Page ID #23547 (alteration in original) (quoting *Nelson*, 243 F.3d at 250). In short, the district court held, "[t]here is nothing in *Allied II* to suggest that the mandate for a 'new trial' requires [the district court] to permit the 'do-over' Allied seeks. A new trial means just that; it does not also include new discovery." *Id.* The district court also highlighted the fact that "Allied never appealed" the district court's exclusion of Klein's testimony. Op. and Order, R. 467, Page ID #23876. Thus, it observed, "Allied is not now prejudiced by the Court's denial of its impermissible attempt to end-run that failure by designating a new expert regarding building weights." *Id.*

Despite the district court's rulings, Allied unilaterally submitted a "supplemental" expert report prepared by Mark Gleason and Jerome Schmitt (the "Schmitt Report"). Allied represented that it submitted the Schmitt Report pursuant to Federal Rule of Civil Procedure 26.

The district court did not abuse its discretion when it denied Allied's motions and when it refused to admit the Schmitt Report.  First, as the district court observed, Allied did not appeal the district court's initial *Daubert* ruling excluding Klein's testimony.  "Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."  *Rouse*, 300 F.3d at 715 (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)).  "The doctrine also bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not."  *Id.* (citing *United States v. Adesida*, 129 F.3d 846, 849–50 (6th Cir. 1997)).  In its brief on appeal, Allied argues that "[t]he law of the case doctrine does not bind a trial court to evidentiary rulings."  Appellant's Br. at 67 (emphasis omitted).  But there is a difference between not being bound by the doctrine and being prohibited from applying it.  The authorities upon which Allied relies are clear that courts have *discretion* to apply the law-of-the-case doctrine to evidentiary rulings.  *See, e.g.*, *United States v. Todd*, 920 F.2d 399, 402–04 (6th Cir. 1990).  Beyond misrepresenting those authorities, Allied provides no reason to suggest that the district court abused said discretion by applying the law-of-the-case doctrine.

Second, and dispositively, this Court's precedent is clear that Klein's purported unavailability does not give Allied the right to a "do-over" as to the district court's unfavorable *Daubert* ruling.  In *Nelson*, the plaintiffs argued that the district court should have "afford[ed] them an opportunity to obtain expert testimony to remedy deficiencies in the proffered testimony before granting summary judgment."  *Nelson*, 243 F.3d at 249.  This Court held that the plaintiffs' argument was "without merit," and that the "[p]laintiffs had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony."  *Id.*  Thus, the Court held that "fairness does not require that a plaintiff, whose expert

witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case before the court may consider a defendant's motion for summary judgment." *Id.* at 250.

The situation in this case is almost identical to *Nelson*. At trial, the district court found that Klein's testimony at trial did not meet the *Daubert* standard. Allied cannot get around that rejection by purporting that Klein is unavailable. In its brief on appeal, Allied devotes considerable argument to whether the district court's *Daubert* ruling was correct. Allied had an opportunity to make those arguments during its first appeal; it cannot make those arguments on a second remand or third appeal. *See id.* at 249–50.

The Court therefore concludes that the district court did not abuse its discretion by denying Allied's motions requesting a substitute expert. Allied failed to appeal the district court's *Daubert* ruling excluding Klein's testimony and the district court did not abuse its discretion by applying the-law-of-the-case doctrine. *See Rouse*, 300 F.3d at 715; *Todd*, 920 F.2d at 402–04. Additionally, and dispositively, Allied was not entitled to have a substitute expert cure the deficiencies in Klein's testimony. *See Nelson*, 243 F.3d at 249–50.

### 2. Mike's Testimony

On second remand, Allied averred that it intended to call Mike to testify regarding his Original Estimate. Allied purports Mike would have testified "as a fact witness, not an expert witness, as to the estimate he did in the ordinary course of business as an owner and employee of Allied and how Allied regularly relied on his estimates in order to conduct its business." Appellant's Br. at 46. According to Allied, Mike "would have testified that he prepared the Original Estimate as part of Allied's standard estimating process, which, as chief estimator, [he]

oversaw for years and had performed hundreds, if not thousands, of similar estimates." *Id.* at 46–47.

The district court held that calling Mike would be "of no help to Allied's cause since, even armed with an authenticated document from Mike Ramun, any new expert will have the same problem as Klein—there is no methodology associated with [Mike's] notes. The *Daubert* problem that led to the exclusion of part of Klein's testimony would not be cured." Mem. Op. and Order, R. 467, Page ID #23877. Later, at a pretrial hearing, the district court added that Mike "was never identified as an expert witness." Hr'g Tr., R. 549, Page ID #50969. Therefore, the district court held, Mike would "not be able to render any opinions or give any testimony regarding . . . the weight of the buildings." *Id.* at Page ID #50983–84. On appeal, Allied (1) challenges that ruling, and (2) argues that, in the alternative, the district court should have allowed Mike to lay the foundation to admit his Original Estimate. Both arguments fail.

### a. Lay Witness or Expert Testimony

Rule 701 provides that lay witnesses can offer "testimony in the form of an opinion" only when that testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "The party offering testimony under Rule 701 must establish that all three requirements are satisfied." *Kilpatrick*, 798 F.3d at 379 (citing *United States v. Freeman*, 730 F.3d 590, 595–96 (6th Cir. 2013)). "The function of lay opinion testimony is to 'describ[e] something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event.'" *Id.* (alteration in original) (quoting *Freeman*, 730 F.3d at 595).

Parties are not permitted to "'bootstrap' [] expert testimony in as lay witness testimony.'" *United States v. Darji*, 609 F. App'x 320, 338 (6th Cir. 2015). However, the distinction between lay witness and expert witness testimony "is far from clear in cases where, as here, a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (citations omitted). In such cases, courts must distinguish between the witness' lay testimony, which "results from a process of reasoning familiar in everyday life," and the witness' expert testimony, which "results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (quotation omitted). To that end, Rules 701 and 702 "distinguish between lay and expert *testimony*, not *witnesses*." *Id.* at 404. Thus, "[o]ne witness may properly offer lay testimony and, at the same time, may be precluded from putting forth expert testimony." *Id.*

The distinction that this Court set forth between lay witness and expert testimony in *White* applies to Mike's possible role at trial. Mike could have offered lay testimony as to some of his experiences at Fairless. *See id.* at 401–04. But the issue before the Court is whether Mike's testimony regarding the Sheet & Tin building weights is expert testimony under Rule 701(c). We hold that it is.

Allied all but concedes this point in its brief on appeal. Allied highlights how Mike "not only performed the estimate for Sheet & Tin, but also performed numerous estimates for both U.S. Steel and numerous other large companies relating to idled steel and other manufacturing facilities." Appellant Br. at 47. It then explains how Mike:

> would have explained how he prepared the estimate, including the detailed measurements he took, his comparison of the various Fairless buildings that he had previously estimated and dismantled both at the Hot End and at various other U.S. Steel facilities, and the basis for his determination of the pounds per square foot, and the ranges he provided for the same. In short, he would have provided the

detailed explanation of the methodology that the [d]istrict [c]ourt believed was lacking.

*Id.* Such testimony would *not* have "result[ed] from a process of reasoning familiar in everyday life." *White*, 492 F.3d at 401 (citations omitted). Instead, it would have "result[ed] from a process of reasoning which can be mastered only by specialists in the field." *Id.* (quotation omitted). Accordingly, the district court did not abuse its discretion in holding that Mike's testimony had to meet the *Daubert* standard. Thus, for the same reasons that the district court did not abuse its discretion in refusing to permit Allied to provide a substitute expert, it did not abuse its discretion in rejecting Mike's testimony: Allied was not entitled to a do-over on the *Daubert* issue. *See Nelson*, 243 F.3d at 249–50; *Rouse*, 300 F.3d at 715; *Todd*, 920 F.2d at 402–04.

### b. The Original Estimate

Allied argues in the alternative that the district court should have allowed Mike to lay the foundation to admit his Original Estimate. Allied's argument on this front is two-fold. First, it accurately points to the fact that "[t]he Original Estimate is a business record and it was admitted into evidence [as P-126] at the 2015 trial." Appellant's Br. at 52 (emphasis omitted). Second, it contends that "Rule 702, and, by extension, Rule 26(a) disclosure requirements do not apply to a properly-admitted business record under Rule 803(6)." *Id.* at 53.

"Rule 803(6) of the Federal Rules of Evidence permits records of regularly conducted business activity to be admitted into evidence if the records meet four requirements: 1) they were 'created in the course of a regularly conducted business activity,' 2) they were 'kept in the regular course of that business,' 3) they resulted from a 'regular practice of the business' to create such documents, and 4) they were 'created by a person with knowledge of the transaction or from information transmitted by a person with knowledge.'" *United States v. Collins*, 799 F.3d 554,

582–83 (6th Cir. 2015) (quoting *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071–72 (6th Cir. 2014)).

It appears that this Court has never expressly ruled on how to determine whether business records containing expert opinion should be admitted into evidence. As a general matter, "Federal Rule 803(6) specifically provides that an admissible regularly kept record may include an 'opinion,' which will ordinarily be that of an expert. Such opinions *should be governed by the ordinary restrictions on expert qualifications* and proper subjects for expert opinions." 2 McCormick On Evid. § 287 (8th ed. 2022) (emphasis added). However, "[c]ourts have reached different conclusions as to whether the proponent of the record must affirmatively establish the expert qualifications of the declarant in a business record." *Id.* n.11.

The Court need not rule on this matter. Despite admitting P-126 as an exhibit, and despite never striking or withdrawing P-126, the district court ruled at trial that it was *insufficient* to calculate the building weights. On second remand, the district court emphasized that "Allied never appealed" that evidentiary ruling. Mem. Op. and Order, R. 467, Page ID #23876. Once again, Allied provides no argument that the district court abused its discretion in applying the law-of-the-case doctrine, *see Todd*, 920 F.2d at 402–04, or in preventing Allied from benefitting from a do-over, *see Nelson*, 243 F.3d at 249–50.

### 3. Fairless Basement

In Allied's second amended complaint, it alleged that the "2003 AIP established an exclusive, non-cancellable, long-term dismantling agreement under which Allied would be entitled to perform 'any further dismantling work' for U.S. Steel at the Fairless [] 'regardless of time.'" Second Am. Compl., R. 43, Page ID #528. It further alleged that, as was consistent with the 2003 AIP's definition of "dismantling work," it was entitled to entitled to compensation for any

"concrete removal below 'top of floor slab' or backfilling and grading of basements." *Id.* at Page ID #531.

At the close of the 2015 trial, the jury found "that U.S. Steel breached the 2003 AIP . . . by hiring another contractor to perform basement work that Allied should have been compensated to perform." Jury Verdict Form, R. 293, Page ID #21209. "Confusingly," *Allied I*, 726 F. App'x at 289, the jury also found "that Allied breached the 2003 AIP . . . by refusing to perform basement work that it should have performed at no additional cost." Jury Verdict Form, R. 293, Page ID #21209. For the mutual breaches, the jury awarded Allied $694,067.00, and it awarded U.S. Steel nothing. *Id.* at Page ID #21210. As this Court expressed in *Allied I*, "[t]he troubling part," of this verdict is that the jury simultaneously found "that Allied 'should have been compensated' for the below-grade removal and backfilling[, but also] that Allied 'should have performed' such work 'at no additional cost.'" 726 F. App'x at 289.

Based upon the jury's finding of mutual breach, Allied moved the district court to "craft a declaratory judgment (1) establishing Allied's right to perform the future basement work and to be compensated for such work and (2) enjoining U.S. Steel from awarding such work to another contractor." Pl.'s Mem. in Supp. of its Request for J., R. 303, Page ID #21399. The district court denied Allied's motion. First, it held that it was required to consider "the jury's fact-findings and reasonable inferences drawn therefrom." Op. and Order, R. 312, Page ID #21477. Second, it determined that the jury found that both parties breached. Accordingly, the district court determined that the jury's verdict precluded it from entering declaratory judgment that Allied was entitled to compensation on such work. Subsequently, because "[t]he rule in Pennsylvania and elsewhere is that when parties to a contract each commit a material breach, the law will give relief to neither party," *Cottman Transmission Sys., Inc. v. Dubinsky*, 550 F. Supp. 133, 136 (W.D. Pa.

1982), the district court reduced the damages owed to Allied to zero. *See Allied I*, 726 F. App'x at 289–90. Allied appealed the district court's order reducing the damages to zero; it did not, however, appeal the district court's denial of its motion for declaratory judgment. *See id.* at 280. This Court affirmed the district court's judgment regarding damages. *Id.*

On second remand, the district court excluded evidence concerning basement damages. As is relevant here, the district court concluded that it had already held that Allied was not *entitled* to damages regarding the basement because the jury found mutual breach. (*Id.*). The district court was correct. Neither party can recover damages in the case of mutual breach. *Cottman Transmission*, 550 F. Supp. at 136.

Allied attempts to get around this problem by asserting that the basement damages at issue arise under the 1992 Specification, rather than the 2003 AIP. Thus, Allied contends, "these separate claims involved different contractual provisions in completely separate agreements." Appellant's Br. at 61. Based upon that argument, the contracts are divisible and Allied would be able to recover damages related to the Fairless basement for Count IV. *See Abbott v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547, 554 n.7 (Pa. Super. Ct. 2002) (observing that a "non-breaching party could be relieved of performance if the provisions were not severable, but still required to perform if they were severable.").

Allied's argument is unpersuasive. First, Allied pleaded that the basement work arose under the 2003 AIP. Second, the 2003 AIP expressly incorporates *all* dismantling work at Fairless. Third, the 2003 AIP expressly "supersedes and replaces Section III(B) of the April 24, 1992 Settlement Agreement[,]" with respect to "further DISMANTLING WORK." 2003 AIP, R. 269-4, Page ID #18108. Finally, Allied itself has argued throughout the duration that the basement claims "were all combined." Hr'g Tr., R. 315, Page ID #21497. Thus, as Allied's counsel put it,

"Allied always believed that a resolution of the basement claims would resolve both the past and the future. They were the same." *Id.*

Allied's argument would fail in any event. Throughout this litigation, Allied has maintained that the basement claims "were all combined." *Id.* Allied did not appeal the district court's holding that the jury found that Allied breached its responsibility "to perform basement work that it should have performed at no additional cost." Mem. Op. and Order, R. 312, Page ID #21469; *see Allied I*, 726 F. App'x at 289–90. It follows, therefore, that if the basement claims were all combined, and if Allied breached its obligations to perform basement work at no cost, then Allied breached its obligations concerning *all* basement work and cannot recover basement damages. Allied failed to appeal the determination that the jury found that Allied breached its basement obligations, and it pleaded and argued that the basement claims were combined. Allied therefore waived any argument to the contrary, and the district court appropriately applied the law-of-the-case doctrine. *See Rouse*, 300 F.3d at 715. Accordingly, the district court did not abuse its discretion in refusing to permit Allied to introduce evidence as to damages that it could not recover as a matter of law.

**4. New Evidence Regarding Allied's Right to Recover the Value of Scrap and Materials at the Hot End**

At trial, John testified that Allied completed the Hot End work by 1999. Later, the district court held, "there was no further dismantling work that was authorized and released following the signing of the 2003 AIP as it pertains to the [H]ot [E]nd." Trial Tr., R. 280, Page ID #20407–08. Therefore, it concluded, "because no further dismantling work was authorized and released in the [H]ot [E]nd area as it pertains to nonferrous materials, there cannot be any damages that flow to Allied." *Id.* Accordingly, the district court excluded evidence related to those damages. On second remand, the district court granted U.S. Steel's motion *in limine* to exclude evidence

regarding Allied's alleged entitlement to, or damages resulting from, any Hot End materials. The district court reasoned that it already ruled, and Allied failed to appeal, that no Hot End materials were ever "released and authorized" for Allied to dismantle after the 2003 AIP.

In the instant appeal, Allied first asserts that the district court wrongly bound itself by its previous evidentiary rulings. In making that argument, Allied relies upon authorities that stand for the proposition the district court has the *discretion* to reconsider previous evidentiary rulings and to admit new evidence. It points to *no authority*, however, suggesting that a district court abuses its discretion if it stands by its previous rulings. As the Court discusses above, whether to apply the law-of-the-case doctrine to evidentiary rulings is a discretionary decision. *Todd*, 920 F.2d at 402–04.

Next, Allied argues that the jury rejected U.S. Steel's contention that no Hot End structures were released and authorized *to Allied*. To support that argument, Allied points to the jury's determination that "U.S. Steel breached the 2003 AIP by *awarding to Fox Construction* [certain Hot End] dismantling work that should have been awarded to Allied[.]" Jury Verdict Form, R. 293, Page ID #21211 (emphasis added). Allied's argument is misleading. The jury found that U.S. Steel breached the 2003 AIP by awarding dismantling work to a third party. The jury's finding does *not* contradict the district court's determination that "there was no authorization and release [to Allied] for the Hot End after the 2003 AIP was entered into." Hr'g Tr., R. 469, Page ID #24043. Accordingly, the district court did not abuse its discretion in rejecting new Hot End evidence.

5. **Allied's Motion to Quantify Damages for Dilatory Retention of Facilities or Materials**

Through Count III of its second amended complaint, Allied sought breach-of-contract damages under the 1992 Contracts. Allied alleged that U.S. Steel delayed releasing facilities at

Fairless to Allied. The district court ultimately awarded U.S. Steel JMOL as to Count III, holding that it was time-barred. In *Allied I*, this Court affirmed that ruling, observing that "Allied's second amended complaint itself does not point to any specific, actionable instance of dilatory behavior by U.S. Steel that happened in June 2008 or later (i.e., within four years of the complaint)." *Allied I*, 726 F. App'x at 284. In a footnote, this Court held that:

> [t]o the extent that U.S. Steel's uncompensated retention of facilities or materials (i.e., the subject of Counts IV and V) occurred within four years before Allied's filing its June 2012 complaint and was also dilatory, Allied may, on remand, pursue relief for those claims on the basis of U.S. Steel's allegedly wrongful retention of the facilities or materials.

*Id.* at 284 n.2. Thus, this Court clarified that the dismissal of Count III did not affect Allied's Count IV and Count V claims related to retained buildings. *See id.* In other words, the Court emphasized that Allied was still permitted to pursue its claims under Count IV and Count V related to allegations that U.S. Steel "plac[ed] on indefinite hold various facilities that were within Allied's scope of work." Second Am. Compl., R. 43, Page ID #551.

On second remand, Allied filed a motion *in limine* to quantify damages for dilatory retention of facilities or materials. Allied contended that *Allied I* allowed "Allied to pursue delay and disruption damages for dilatory retentions. There is no other interpretation . . . ." Mot. *in Lim.*, R. 447, Page ID #23637–38. Thus, Allied moved the court for permission "to supplement its damage calculations accordingly by, *inter alia*, designating an expert to quantify its delay/disruption damages for Count IV." *Id.* at Page ID #23638. In a perplexing paragraph, Allied insisted that it was "not asking the [district court] to reopen discovery," but that it "would of course make any additional damage expert available for deposition if U.S. Steel were to request such." *Id.* at Page ID #23639.

The district court held that Allied would be able to present evidence concerning dilatory behavior that allegedly occurred within the statute of limitations. But it emphasized that it would not reopen discovery or permit the submission of an expert report. The district court asserted that "we're not doing a trial by ambush . . . that's why we have discovery, right? And that's why everyone is deposed. That's why we have expert reports." Hr'g Tr., R. 469, Page ID #23987. Thus, the district court would not allow a *new* expert opinion.

The district court did not abuse its discretion in refusing to reopen discovery. *Allied I* did not allow Allied to revive Count III or pursue new claims. Instead, it affirmed the dismissal of Count III and clarified that Allied was still permitted to pursue *existing* claims under Count IV. *Allied I*, 726 F. App'x at 282–85. Nothing in *Allied I* mandated that the district court reopen discovery. Whether to reopen discovery is a decision made at the district court's discretion, and Allied provides no authority to suggest that the district court abused its discretion by refusing to do so.

## CONCLUSION

For the reasons stated above, the district court's judgment is **AFFIRMED**.

**NALBANDIAN, Circuit Judge, concurring in part and dissenting in part.** I agree with nearly all the majority opinion. My only disagreement is with its conclusion on the basement damages. I don't think the jury's finding of mutual breach on Count I has a preclusive effect on the remaining basement damages claims under Counts IV and V. So I think this part of the case should go forward, and I respectfully dissent on this issue.

## I.

The basement-damages claim raises one question: whether the parties' mutual breach on Count I eliminates Allied's claim to basement damages on Counts IV and V. Recall that Count I was for damages on the performance of backfill work below the "top of floor slab" in basements under the 2003 specification. (R. 303, Allied's Request for Judgment on Count I, p. 4, 15.) So Allied could not recover under Count I. That's because the jury had found that both Allied and U.S. Steel had breached the relevant 2003 provision, and mutual breach precludes damages under Pennsylvania law. *See Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 726 F. App'x 279, 290 (6th Cir. 2018).

Counts IV and V, on the other hand, are damages claims based on ownership of scrap metal in the basements under the 1992 specification. And we ordered a new trial on Counts IV and V in our last opinion. *See Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 814 F. App'x 21, 28 (6th Cir. 2020). So Allied is seeking recovery under Counts IV and V for basement scrap metal—not for the backfill work of Count I.

The question for us is whether the patchwork of the 1992 and 2003 specifications forms a severable agreement or a non-severable agreement. If the contract is severable, then preclusion of damages on one claim won't preclude damages on another. *Abbott v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547, 554 n.7 (Pa. Super. Ct. 2002) (explaining that recovery is based on

whether there are "separate items" in a contract (citation omitted)). But if the contract is non-severable, mutual breach may bar recovery of damages on any claim. *See id.*

Rewinding to the district-court docket activity on second remand, U.S. Steel filed a motion in limine, asking the district court to exclude any evidence of damages on the scrap metal in the basement. And in its first ruling in response to that motion, the district court said that to the extent that Counts IV and V relied on different evidence from the evidence used for Count I, the claims could go forward. (R. 470, Hearing, p. 57–58; *see also* R. 439, Order, p. 11 ("Allied sought declaratory relief *only* on Count I, which specifically related to payment for concrete removal and basement backfill. The issues in Count I have already been decided and did not encompass any part of the two counts that remain for a new trial.").) Allied confirmed that was the case. It said that its Counts IV and V claims were for "scrap ownership, not concrete removal." (R. 470, Hearing, p. 58.) So, as far as Allied knew, it still had viable damages claims on Counts IV and V.

But in the final pretrial hearing and over Allied's objection, the district court seemingly reversed itself and decided that Allied was precluded from presenting evidence of damages on the scrap in the basement based on the jury's prior finding on Count I. On appeal, Allied again argues that the contract is severable and that it should be allowed to present evidence on the basement scrap.

Under Pennsylvania law, we must look at "the intent of the parties" to determine whether a contract is severable. *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445, 452 (Pa. 2001). That means we look at the "explicit language of the contract," and, if there is no explicit language, we look at the construction of the agreement—"including the nature of the consideration." *Id.*; *see also id.* at 451 (explaining that when "consideration is apportioned, either expressly or by necessarily implication . . . the contract will generally be held to be severable" (citation omitted)).

Here, the plain language of the 2003 agreement shows that the contract provisions do not depend on one another:

> Notwithstanding the provisions of Section I(B) above, matters and agreements set forth herein and made a part hereof are made and undertaken solely to compromise and to settle various claims and counterclaims and, as such, the parties agree that this Agreement, or any part hereof or undertakings hereunder, shall not be used, construed, or referred to for the purpose of advancing any interpretation, argument, or position with respect to the language, provisions, meaning, interpretation, application, or valuation of any other agreement between the parties, including, but not limited to, the Settlement Agreement and General Release, dated April 24, 1992, or any part thereof.

(R. 269-4, 2003 Agreement, p. 7–8.)

The 2003 agreement says that it doesn't alter the contractual obligations of other agreements, including the 1992 agreement specifically. This leads me to conclude that the contract is severable under Pennsylvania law. *Pa. Dep't of Transp. v. Pace*, 439 A.2d 1320, 1322 (Pa. Commw. Ct. 1982) (allowing two different suits arising out of the same contract and explaining that "causes of action which are distinct and independent, although growing out of the same contract, transaction or state of facts, may be sued upon separately, and recovery of judgment for one such cause will not bar subsequent actions upon the others"); *Graham Eng'g Corp. v. Adair*, No. 1:16-CV-2521, 2021 WL 9204331, at *9 (M.D. Pa. Feb. 10, 2021) (applying Pennsylvania law to determine that while the noncompete provisions of an agreement were unenforceable, that fact "d[id] not invalidate all aspects of their respective agreements"). On top of the plain language, the consideration for each contract is different. Compensation for the backfill work under the 2003 agreement is not the same as the dismantling work leading to the ownership of the scrap metal under the 1992 specification. *Shields v. Hoffman*, 204 A.2d 436, 438 (Pa. 1964) ("But even if the contract did not so specify, we would conclude that the provisions of the contract are severable

because the parties apportioned the consideration both as to subject matter and payment."). So, in my view, the mutual breach on Count I under the 2003 agreement doesn't preclude the introduction of evidence on the other basement damages under Counts IV and V. I would remand for a trial on these damages based on the evidence already in the record, so I respectfully dissent on this issue.